Name: Michael McCarron
Address: 22510 Needles Street
City, State, Zip: Chatsworth, CA 91311
Phone: 818 540-8801
Fax:
E-Mail:

☐ FPD ☐ Appointed ☐ CJA ☒ Pro Per ☐ Retained

FILED
CLERK, U.S. DISTRICT COURT
JUN - 8 2016
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| Southwest Regional Council of Carpenters, et al. | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | CV 14-02762 JVS (JCx) |
| v. | |
| Michael McCarron | NOTICE OF APPEAL |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____ Michael McCarron _____ hereby appeals to
                                          *Name of Appellant*
the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☐ Order (specify):

☒ Judgment (specify):
   May 20, 2016 judgment in favor of 3rd
   Party Southwest Carpenters Training Fund

☐ Other (specify):

Imposed or Filed on ___May 20, 2016___. Entered on the docket in this action on ___May 20, 2016___.

A copy of said judgment or order is attached hereto.

June 7, 2016
Date

PAID
JUN - 8 2016
Clerk, US District Court 4612

/s/ Michael McCarron
Signature

☒ Appellant/ProSe    ☐ Counsel for Appellant    ☐ Deputy Clerk

**Note:** The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:14-cv-02762-JVS-JC | Date | 5/16/2016 |
| Title | SOUTHWEST REGIONAL COUNCIL OF CARPENTERS V. MICHAEL MCCARRON | | |

Present: The Honorable  James V. Selna , U. S. District Judge

Karla Tunis
Deputy Clerk

Sharon Seffens
Court Reporter/Recorder

Attorney(s) Present for Plaintiff(s):
Michael McCarron, pro se

Attorney(s) Present for Defendant(s):
Craig Singer

**Proceedings:**  Southwest Capenters Training Fund's Motion to Dismiss the First Amended Third Party Complaint

    Cause called and the parties make their appearances. The Court's tentative ruling is issued. The parties make their arguments. The Court GRANTS the above referenced motion and rules in accordance with the tentative ruling as attached hereto.

    The Court ORDERS the stay on the remaining claims in the Third Party Complaint lifted.

:12

Initials of Preparer: kt

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOUTHWEST REGIONAL COUNCIL OF CARPENTERS, an unincorporated association,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL McCARRON, an individual,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS AND THIRD-PARTY CLAIM. | Case No. 2:14-CV-02762 JVS (JCx)<br><br>**JUDGMENT**<br><br>Honorable James V. Selna |

The Court hereby enters judgment in favor of Third-Party Defendant Southwest Carpenters Training Fund against Third-Party Plaintiff Michael McCarron, also known as William Michael McCarron, on all third-party claims against Southwest Carpenters Training Fund in accordance with the Court's order of dismissal dated May 16, 2016.

Third-Party Defendant Southwest Carpenters Training Fund shall recover its costs.

IT IS SO ORDERED.

DATED: May 20, 2016

Honorable James V. Selna
United States District Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Sw. Reg'l Council of Carpenters v. McCarron,
SACV 14-2762 JVS (JCx)

## Order GRANTING Motion to Dismiss

Third-Party Defendant Southwest Carpenters Training Fund ("Training Fund") filed a Rule 12(b)(6) motion to dismiss Third-Party Plaintiff Mike McCarron's ("McCarron") First Amended Third-Party Complaint for failure to state a claim.[1] Docket Nos. 342, 440. McCarron filed an opposition.[2] Docket No. 444. The Training Fund filed a reply. Docket No. 445. On the Court's invitation, the United States Department of Labor ("Labor Department") filed a statement of interest under 28 U.S.C. § 517.[3] Docket No. 451. McCarron filed a response to the Labor Department's statement of interest. Docket No. 454.

For the following reasons, the Court **grants** the Training Fund's motion to dismiss. The Court **dismisses** McCarron's claims against the Training Fund with

---

[1] In support of its motion to dismiss, the Training Fund requests judicial notice of the following documents: (1) the Southwest Regional Council of Carpenters's Form LM-2 Labor Organization Annual Report dated September 24, 2012, on file with the Labor Department; (2) the Training Fund's Internal Revenue Service Form 990 for the 2012 calendar year, on file with the Internal Revenue Service; and (3) Sw. Reg'l Council of Carpenters v. McCarron, Case No. 8:14-cv-02762-JVS-JC (C.D. Cal.), Docket Nos. 1, 191, 274, 339, and 346. Docket No. 441. Courts may take judicial notice of documents on file with federal administrative agencies. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). Courts may also take judicial notice of federal court filings. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). The Court therefore **grants** the Training Fund's requests for judicial notice.

[2] In support of his opposition, McCarron requests judicial notice of the filings in McCarron v. United Brotherhood of Carpenters and Joiners of Amer., Case No. 8:13-cv-01559-JVS-AN (C.D. Cal.). Docket No. 440 at 4. The Court **grants** McCarron's request for judicial notice. See Lee, 250 F.3d at 689. McCarron also requests judicial notice of the filings in the United Brotherhood of Carpenters and Joiners of America's September 2013 trial against McCarron. Docket No. 440 at 4; see also Docket No. 191 at 5 (describing trial). McCarron has failed to establish that these filings are appropriate for judicial notice under Federal Rule of Evidence 201(b). The Court therefore **denies** this request for judicial notice.

[3] After the Training Fund filed its motion to dismiss, the Court invited the Labor Department to submit an amicus brief on the following two issues: (1) "Does ERISA preempt a claim based on a transaction between two ERISA-regulated parties–the Union and the Training Fund–with respect to rent payments?" and (2) "Does federal law permit a party who has sustained a judgment for violation of the LMRDA to seek contribution or indemnity?" Docket No. 442.

prejudice.

1. **Background**

The Training Fund is a multi-employer benefit plan that provides an apprenticeship program for union carpenters. Docket No. 330 ¶ 7. As a multi-employer benefit plan, the Training Fund is regulated under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a) et seq. The Southwest Regional Council of Carpenters ("Council") is a labor organization affiliated with the United Brotherhood of Carpenters and Joiners of America, and its members receive education and training from the Training Fund. Id. ¶ 5. McCarron served as Executive Secretary-Treasurer of the Council from August 1999 to July 2013. Id. ¶ 14. As Executive Secretary-Treasurer, McCarron was the Council's chief executive officer and responsible for the Council's day-to-day business activities. Id. He also served as a Trustee of the Training Fund.

The Training Fund leased properties from the Council for use as training facilities. Id. ¶ 17. In May 2013, the Training Fund told McCarron that certain leases were overcharged and requested a refund for two separate periods totaling $4,736,970.52. Id. McCarron, as the Council's Executive Secretary-Treasurer, issued two checks from the Council to the Training Fund refunding the amount requested. See id. ¶¶ 18, 23.

In April 2014, the Council sued McCarron for breach of fiduciary duty in violation of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), alleging that McCarron breached his fiduciary duties by failing to obtain authorization from the Council's governing board before refunding the lease overcharges. Docket No. 1. While defending against the Council's claims, McCarron made admissions under Federal Rule of Civil Procedure 36 that the rents were set at fair market rates. Docket No. 191 at 14, 14 n.8. On the basis of McCarron's admissions, the Court granted the Council's motion for summary judgment that McCarron violated his fiduciary duties under the LMRDA and entered judgment against McCarron in the amount of $5,364,970.10. Docket No. 339.[4]

---

[4] The Court's judgment is currently on appeal to the Ninth Circuit. See Sw. Reg'l Council of Carpenters v. McCarron, Docket No. 15-55879 (9th Cir.).

2

The Court later granted McCarron leave to file a third-party complaint against the Training Fund.[5] Docket No. 274. In his Third-Party Complaint, McCarron alleges federal law claims for indemnity and contribution and state law claims for restitution, conversation, money had and received, mistaken receipt, and conspiracy, and seeks recovery of the $5,364,970.10.[6] Docket No. 330 ¶¶ 27-40, 64-70. The Training Fund now seeks to dismiss the Third-Party Complaint in its entirety for failure to state a claim under Rule 12(b)(6). Docket Nos. 342, 440.

## 2. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Rule 12(b)(6) requires courts to dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). To overcome a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Iqbal and Twombly, courts must follow a two-pronged approach. First, courts must accept all well-pleaded factual allegations as true. Iqbal, 556 U.S. at 678. At this step, courts can only consider the complaint, materials incorporated into the complaint by reference, and matters

---

[5] McCarron's Third-Party Complaint also brought claims against DeCarlo & Shanley, PC, the Training Fund and the Council's attorneys. Docket No. 330. The Court severed and stayed McCarron's claims against DeCarlo & Shanley, PC. Docket No. 274.

[6] McCarron does not expressly style his claims for indemnity and contribution as federal claims. Docket No. 330 ¶¶ 27-31. McCarron seeks indemnity and contribution from the Training Fund for his breach of fiduciary duty in violation of the LMRDA. Id. Federal law determines whether defendants held liable under a federal statute may seek indemnity and contribution from a third party. Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev., 934 F.2d 209, 212 (9th Cir. 1991) (per curiam). Accordingly, McCarron cannot sue for indemnity or contribution under state law. The Court therefore construes McCarron's claims for indemnity and contribution as federal claims. Moreover, as noted in Section 3.2 below, any remedy based on state law would be preempted under ERISA.

subject to judicial notice. Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1061 (9th Cir. 2008). Second, assuming the well-pleaded factual allegations are true, courts must "determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. This determination is "context-specific," requiring courts to draw on their experience and common sense. Id. There is no plausibility, however, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

### 3. Analysis

The Training Fund argues that the Court should dismiss McCarron's claims against the Training Fund with prejudice because, among other reasons, federal law provides no right to indemnity or contribution under the LMRDA and McCarron's state law claims are preempted by ERISA. Docket No. 440 at 17-26. The Court agrees.

#### 3.1. Federal law provides no right to indemnity or contribution under the LMRDA.

McCarron seeks indemnification and contribution against the Training Fund for his breach of fiduciary duty in violation of section 501(a) of the LMRDA. "A defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law." Doherty v. Wireless Broad. Sys. of Sacramento, Inc., 151 F.3d 1129, 1130-31 (9th Cir. 1998) (citing Tex. Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638 (1981)). As discussed below, there is no right to indemnity or contribution under the LMRDA: Congress has not affirmatively created a right to indemnity or contribution under the LMRDA, nor is there such a right under federal common law. The Court therefore dismisses McCarron's federal claims for indemnity or contribution against the Training Fund with prejudice.

##### 3.1.1. Congress has not created a right to indemnity or contribution under the LMRDA.

The LMRDA does not expressly provide a private right of action for indemnity or contribution. 29 U.S.C. §§ 401-531. "In determining whether a

federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction." Nw. Airlines, Inc. v. Transp. Workers Union of Amer., AFL-CIO, 451 U.S. 77, 91 (1981). "The ultimate question in cases such as this is whether Congress intended to create the private remedy–for example, a right to contribution–that the plaintiff seeks to invoke." Id. "Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies." Id. None of these factors suggests that Congress created an implied right of action for indemnity or contribution under the LMRDA.

As relevant here, the LMRDA's stated purpose is to "eliminate or prevent improper practices on the part of labor organizations, employers, labor relations consultants, and their officers and representatives . . . ." 29 U.S.C. § 401(c); see also Local No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers, Warehousemen & Packers v. Crowley, 467 U.S. 526, 536 (1984) ("The LMRDA was the product of congressional concern with widespread abuses of power by union leadership." (internal quotations omitted)). Consistent with the statutory text, the legislative history for LMRDA also shows that Congress intended the LMRDA to eliminate misconduct by labor organization officers: for example, the House Report explains that the LMRDA is "primarily designed to correct the abuses which have crept into labor and management" and to establish "unequivocally" that "[i]t is the duty of union officers . . . to put their obligations to the union and its members ahead of any personal interest." H.R. Rep No. 86-741, at 1, 81 (1959). To that end, section 501(a) of the LMRDA allows labor organization members to bring private enforcement actions against labor organization officers like McCarron for breach of fiduciary duty. Id. § 501(a)-(b). In this respect, the LMRDA is a punitive statute intended to regulate misconduct by labor organization officers. Permitting McCarron to mitigate his liability for breach of fiduciary duty by seeking indemnity or contribution against third-party wrongdoers would therefore be inconsistent with the LMRDA's text, purpose, structure, and legislative history. See, e.g., Teamsters, Chauffeurs, Warehousemen & Helpers Local 764 v. Greenawalt, 919 F. Supp. 774, 779 (M.D. Pa. 1996), aff'd in part and vacated as moot in part sub nom. Teamsters, Chauffeurs, Warehousemen & Helpers, Local 764 v. Greenwalt, 116 F.3d 470 (3d Cir. 1997) (Table) ("Permitting claims of contribution or indemnity to be asserted by alleged violators of section 501 is not a logical extension of [the LMRDA's] purpose."). Accordingly, the

Court declines to find that Congress has created a right to indemnity or contribution under the LMRDA.

        3.1.2.      Federal common law provides no right to indemnity or contribution under the LMRDA.

In the absence of an express or implied right to indemnity or contribution under the LMRDA, "if any right to contribution or indemnity exists, it must arise under federal common law." Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev., 934 F.2d 209, 213 (9th Cir. 1991). The creation of a right under federal common law is appropriate in only two cases: (1) "a federal rule of decision is necessary to protect uniquely federal interests," and (2) "Congress has given the courts the power to develop substantive law." Tex. Indus., 451 U.S. at 640. These cases are "few and restricted." Wheeldin v. Wheeler, 373 U.S. 647, 651 (1963). Neither applies here.

First, a right to indemnity and contribution under the LMRDA is not necessary to protect "uniquely federal interests." Tex. Indus., 451 U.S. at 640. For purposes of federal common law, "uniquely federal interests" include "the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." Id. "The right of recovery from another wrongdoer, however, does not implicate any such interests." Mortgages, 934 F.2d at 213 (finding no right to indemnity or contribution under the federal False Claims Act, 31 U.S.C. § 3279 et seq.). The Court therefore declines to find a federal common law right to indemnity or contribution under the LMRDA on this basis.

Second, Congress has not given courts the power to develop substantive law regarding the right of recovery from third-party wrongdoers under the LMRDA. "Congress may empower federal courts to make federal common law when a statute contains sweeping language and its legislative history indicates Congress's expectation that the courts will 'give shape to the statute's broad mandate by drawing on common-law tradition.'" Mortgages, 934 F.2d at 213 (quoting Nat'l Society of Prof. Eng'rs v. United States, 435 U.S. 679, 688 (1978)). "Where, however, Congress has enacted a comprehensive legislative scheme, including integrated procedures for enforcement, there is a strong presumption that Congress did not intend the courts to supplement the remedies enacted." Id. (citing Nw. Airlines, 451 U.S. at 97). As discussed in Section 3.1.1 above, the LMRDA

6

provides a comprehensive legislative scheme with integrated civil enforcement procedures for breach of fiduciary duty by labor organization officers, and there is no indication that Congress otherwise intended courts to supplement these procedures by allowing violators to seek new remedies against third-party wrongdoers. The Court therefore declines to find a federal common law right to indemnity or contribution under the LMRDA on this basis as well.

    3.2.    McCarron's state law claims are preempted by ERISA.

ERISA provides for the comprehensive federal regulation of multi-employer benefit plans such as the Training Fund. Metropolitan Life Ins. Co. v. Parker, 436 F.3d 1109, 1111 (9th Cir. 2006). To that end, ERISA includes two preemption provisions that defeat certain state law claims: "complete preemption" under ERISA section 502(a) and "conflict preemption" under ERISA section 514(a). The Training Fund argues that all of McCarron's state law claims are preempted under ERISA's conflict preemption provisions. The Court agrees.

ERISA's conflict preemption provisions provide that ERISA "shall supersede any and all State laws insofar as they may . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). For purposes of ERISA preemption, a state law claim "relate[s] to" an ERISA plan if the claim either makes "reference to" or holds a "connection with" an ERISA plan. Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 324 (1997). A state law claim has an impermissible "connection with" an ERISA plan when the claim "governs . . . a central matter of plan administration," "interferes with nationally uniform plan administration," or "if acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." Gobeille v. Liberty Mut. Ins. Co., --- U.S. ---, 136 S. Ct. 936, 943 (2016) (internal quotations omitted). The Ninth Circuit takes a "purposive and relationship-focused approach" to this analysis. Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson, 201 F.3d 1212, 1221 (9th Cir.), opinion amended on denial of reh'g, 208 F.3d 1170 (9th Cir. 2000). Under the Ninth Circuit's "relationship test," "a state law claim is preempted under the "connection with" prong when the claim bears on an ERISA-regulated relationship." Paulsen v. CNF, Inc., 559 F.3d 1061, 1082 (9th Cir. 2009) (citing Providence Health Plan v. McDowell, 385 F.3d 1168, 1172 (9th Cir. 2004)). Accordingly, "[t]he key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively

7

regulates certain <u>relationships</u>: for instance, the relationship between plan and plan member, between plan and employer, between employer and employee (to the extent an employee benefit plan is involved), and between plan and trustee." <u>Gen. Amer. Life. Ins. Co. v. Castonguay</u>, 984 F.2d 1518, 1521 (9th Cir. 1993).

McCarron's state law claims bear on ERISA-regulated relationships. As part of ERISA's comprehensive framework for regulating multi-employer benefit plans, ERISA section 406 regulates certain transactions between ERISA plans and ERISA "parties-in-interests" like the Council.[7] 29 U.S.C. § 1106. Transactions described in section 406 are prohibited unless they fall under a specific statutory exemption identified in ERISA section 408. <u>Id.</u> § 1108. As relevant here, ERISA section 406(a) prohibits an ERISA fiduciary from causing an ERISA plan to enter into any transaction that constitutes the "direct or indirect . . . leasing[] of any property between the plan and a party in interest," <u>id.</u> § 1106(a)(1)(A), unless the lease agreement is for "office space, legal accounting, or other services necessary for the establishment or operation of the plan" and "no more than reasonable compensation is paid therefor," <u>id.</u> § 1108(b)(2). Here, McCarron's state law claims are based on lease agreements for training facilities that McCarron entered into with the Training Fund (as an ERISA plan) on the Council's behalf (as an ERISA party-in-interest). Accordingly, McCarron's state law claims bear in part on (1) whether the Council's lease agreements with the Training Fund constituted a prohibited transaction under ERISA section 406(a) and (2) whether the Council's rent charges to the Training Fund were otherwise permissible under ERISA section 408's exception for fair market office space. In this way, McCarron's state law claims bear on an ERISA-regulated relationship between the Training Fund and the Council. McCarron's state law claims against the Training Fund are therefore preempted under ERISA's conflict preemption provisions. The Court dismisses McCarron's state law claims against the Training Fund with prejudice.

### 3.3. The Court declines to consider the Training Fund's alternative arguments for dismissing McCarron's state law claims.

In addition to ERISA preemption, the Training Fund offers several alternative arguments for dismissing McCarron's state law claims. Docket No. 440

---

[7] ERISA defines "party in interest" to include, among others, "employee organization[s] any of whose members are covered by [an employee benefit] plan." 29 U.S.C. § 1002(14)(D). This includes the Council, whose members received training from the Training Fund.

at 26-32. Because the Court determines that McCarron's state law claims must be dismissed with prejudice under ERISA preemption, the Court declines to consider the Training Fund's alternative arguments for dismissal.

3.4. The Court declines to disqualify the Training Fund's counsel.

In his opposition, McCarron requests that the Court disqualify Williams & Connolly LLP from representing the Training Fund in this action. Docket No. 444 at 4. A request to disqualify opposing counsel must be brought in a properly-noticed motion under Local Rule 6-1, not in an opposition to a Rule 12(b)(6) motion to dismiss. See Local Rule 6-1 ("[E]very motion shall be presented by written notice of motion" filed with the clerk at least twenty-eight days before the hearing date.). Moreover, McCarron fails to provide any reason for disqualification. See Optyl Eyewear Fashion Int'l Corp. v. Style Cos. Ltd., 760 F.2d 1045, 1050 (9th Cir. 1985 ("[D]isqualification motions should be subjected to particularly strict judicial scrutiny." (internal quotations omitted)). The Court therefore declines to disqualify Williams & Connolly LLP from representing the Training Fund at this time.

4. Conclusion

For the reasons stated above, the Court **grants** the Training Fund's motion to dismiss. The Court **dismisses** McCarron's claims against the Training Fund with prejudice.

IT IS SO ORDERED.

## PROOF OF SERVICE BY MAIL

STATE OF CALIFORNIA )
COUNTY OF LOS ANGELES )

I reside in the County of Ventura, State of California. I am over the age of 18 years and not a party to this action; my address is 5575 Bromely Drive, Oak Park, California 91377

On June 7, 2016, I served the foregoing document described as NOTICE OF APPEAL AND TRANSCRIPT DESIGNATION FORM on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope in the United States mail at Oak Park, California, addressed as follows:

DeCarlo & Shanley
533 South Fremont Ave., 9th Floor
Los Angeles, CA 90071

Andersen, McPharlin & Conners, LLP
707 Wilshire Blvd. Suite 4000
Los Angeles, CA 90017-3623

Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C., 20005

X Via U.S. Mail: I am "readily familiar" with the practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Oak Park, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

Executed June 7, 2016 at Oak Park, California.

_____
Janet Proffer